here. Here we here. We the United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and his honor before it. Morning and welcome to the third day of our panel sitting. Judge Rosenbaum, Judge Newsome and I were supposed to be with all of you in Jacksonville, but obviously, Hurricane Ian changed our plans and we decided to hold this panel electronically as opposed to in person. And we've seen all of the images of the devastation on the west coast of Florida and the storm is trekking its way up through the middle of the state and then out. And so our thoughts and prayers are with all of those who are affected and injured by by the We'll start with case number 21-10809 United States v. Clark Downs. Mr. McFarland. Good morning, Your Honors. Ryan McFarland on behalf of Clark Downs. May it please the court. Your Honor, in ground one of Mr. Downs' appeal regards legally insufficient evidence as to the time of the production of the sexually explicit images. And Downs was charged in count one of his indictment with violating 18 U.S.C. 2251A, production of child pornography. And 2251A reads in pertinent part that any person who employs, uses, persuades, induces, entices or coerces any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection E. And if, and this is the important word, that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate commerce or foreign commerce by any means. And the Sixth Circuit addressed this question in United States v. Lively in 2017. And they held that to violate 2251A, a defendant must sexually exploit a minor for the purpose of producing a visual depiction of this exploitation. And that the same visual depiction must be produced using materials that have interstate commerce nexus. That was not proven. Mr. McFarland, can I ask a question? So do you, I don't take you in your brief to dispute the proposition that production can include the transfer of the images from the phone to the But I guess what I mean is the term production in the statute, do you dispute that the term produce, I guess, can include the transfer of the images from the cell phone to the hard drive? And if so, why isn't the nexus met by the fact that everybody agrees that the hard drive is Chinese? Well, no, no, Your Honor, we wouldn't dispute that production could potentially be that. But the problem here and the problem that the Lively Court was highlighting is that you could have the production of child pornography, meaning taking the picture that doesn't have any sort of interstate nexus attached to it. And then later, at some point, that picture could be taken, potentially by someone else as it was in the Lively case. And that could then satisfy the interstate nexus. And that's not good enough under 2251A. I guess that's the problem. Just to follow up very briefly, the reason that I just don't think I'm following the Lively analogy is that if you just acknowledged in response to my question that the transfer from the phone to the hard drive constitutes production, then whether or not the initial creation also constitutes production, I'm not really sure it much matter, you've just sort of acknowledged that the transfer itself is production. And the transfer, it seems to me obviously involved in interstate nexus. Well, but Your Honor, there was no evidence of the transfer at trial. I mean, then the point of the Lively analysis is that the statute specifically says that that visual depiction, meaning, or that production, so that initial production, the taking of the picture, they needed to prove an interstate nexus there. So if, for instance, they had proven that the cell phone had an interstate nexus, you know, that there was some sort of that in that case. Counsel, relatedly, but sort of on a different theme, I guess, we have a case called United States versus Maxwell, which construes the text of a different statute, but that as far as I can tell, at least in as much as the production element is phrased in a materially indistinguishable way. And in that case, we held that it's enough to satisfy that if the disks on which, so when the computer disks on which the images were stored, but not the images themselves, have traveled in interstate commerce. So why are we not bound by that? Even though it's not the same statute, it's hard to see how we could distinguish the reasoning. And as you know, under our prior precedent rule, we are bound not only by the express holdings, but by the rationale to the extent that it necessarily determines the outcome. Well, Your Honor, this is an insufficiency claim. And the insufficiency claim is specifically that the government in this case did not prove the interstate nexus as to the production that they proved. So the fact, theoretically, that Downs could have produced or they could have proven at trial that he produced, meaning copying onto the hard drive, that's sort of irrelevant to this analysis. But counsel, didn't L.H., didn't she testify that he had told her that he downloaded the images from the phone to the computer? I mean, why isn't that enough evidence if the jury chose to believe it, to demonstrate that he produced those images on the computer, especially coupled then with the evidence that the computer traveled in interstate commerce? Well, Your Honor, because as they discuss in the Lively case, it has to do with the actual persuasion or the sexual exploitation of the child, that that has to be coupled with the fact that she testified that at some point later, he supposedly transferred these files, which Your Honor, that statement is the only thing in the whole trial record that says that Downs was the one that produced or put these images onto the computer. And as also came up in the trial, there was lots of other people that had access to that computer. So we don't know exactly how there was no evidence as to how the images got from the phone to the computer, or even what phone. I guess I don't understand how we can just ignore her testimony. I mean, are you saying that her testimony as a legal matter couldn't be sufficient to support that conclusion by the jury? Yes, Your Honor, I am. And also... Why is that? Why is her testimony not enough? Why is it not enough for the jury to believe that testimony? Your Honor, it's because... I'll get back to... I'll try to answer your question. There was no time attributed to that. There was no means attributed to how the images got from the phone to the computer. But getting back to the actual problem here, at least as I see it, is that the statute requires the actual sexual exploitation to have an interstate connection. And here, the sexual exploitation, meaning the taking of the pictures, didn't have... There was no interstate nexus proof to it. That's why I was asking you about the Maxwell case. Because in Maxwell, we said it's enough, even if it's just copied onto the computer, that that's satisfied. If the computer it's copied onto has traveled in interstate commerce, that's enough. And so I'm wondering if you could explain to people on its facts, or explain why Maxwell, which construes essentially the same language in 2252A, doesn't bind us under our prior precedent rule. Well, Your Honor, I don't have 2252A up in front of me. But I would say that the operative word here is that, in 2251A, where it says that that visual depiction was produced, transmitted. And so... I'm sorry, just to be fair to you, I want to explain what the words in 2252A-5B say. And it says, or that quote, was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. So the problem I'm having is that seems... I don't see how you can distinguish that language from the language in the statute we are construing. But maybe I'm missing something, which is why I want to give you a chance to address it. Yes, Your Honor. I think, I mean, just glancing out, I think that 2252A, you know, is a different statute in that it doesn't require this coercion, the actual exploitation of the child. It's taking already produced child pornography, and then, you know, applying in that case, I'm trying to read it on the fly here, but the distribution of already created child pornography, whereas here in 2251A, for the court to adopt that reasoning from Maxwell, you would have to read into the statute the word subsequently. Because if the word subsequently is not there, then that visual depiction has to contemporaneously apply to the coercion itself. Carlin, I thought, to go back to Judge Newsom's first question to you, I thought that your position was, based on the Sixth Circuit's decision in Lively, that the means of taking the initial images themselves have to have an interstate nexus. Isn't that right? That's your position, right? Yes, Your Honor. So, for example, if a person charged with this offense lived in Florida and took the pictures with a camera made in Florida, with all of its constituent park mates in Florida, you would argue that that person can never be convicted of a 2251A offense, right? Yes, Your Honor, that's correct. That's what I thought your argument was. So, in response to Judge Newsom's question, you think that given the language of the statute, the transfer of the images from the camera that took them in the first place to a computer or a drive with interstate nexus is not enough, right? Yes, Your Honor, unless that was done specifically at the time of the coercion. Was the jury instructed here on all three possibilities for the interstate nexus? Under the statute or only under one of them? Your Honor, I honestly don't know. I can find out before the rebuttal. Okay, that sounds good. So, can I just follow up on that issue briefly? And then at the risk of making you overstay at the podium, I'd like to get you to address your second issue. And I'll the word produce, which applies both to the statute that Judge Rosenbaum, the possession statute that Judge Rosenbaum was discussing with you, and the production statute that we're here under defines the word produce. It says it includes producing, directing, manufacturing, issuing, publishing, or advertising, right? So, some of those might plausibly be limited to the initial act of creation, but publishing and advertising, I don't see how those could possibly be limited to the initial act of creation. I mean, those are necessarily subsequent to the initial act of creation. So, how could it be produced that it necessarily is limited to the initial act of creation? I just don't quite understand that. And I didn't, frankly, until this minute, take you to dispute that. Well, yes, Your Honor, the actual production, so say in the advertising, it could be the intent all along that the sexual exploitation was with intent to then advertise or whatever with the visual, the image. And so, that you could still conceivably have a conviction under 2251A if a child is exploited and the images are then used in marketing. But if a child is just exploited, and then at some point later on, with not tied to the original intent, the images are taken, and then at that point, an interstate nexus is attached. That, Your Honor, I don't think counts. Okay. So, can I, with my co-panelists' indulgence, ask you to address your second issue? And just speaking for myself, I'm not sure that the Fifth and Sixth Amendments work for you very well, but I am pretty intrigued by Rule 43. Can you explain to me under Rule 43 whether discharge is or is not a trial stage within the meaning of 43? And if so, whether any of the enumerated exceptions would apply? Well, Your Honor, I think under Rule 43 that the jury and panel meant necessarily includes dismembering the panel or dismissing the panel. Although it's not explicitly stated in Rule 43, I think where it says at every trial stage, including jury and panel meant, and the return of the jury, the defendant must be present. I think that applies here kind of in the negative, that if they're required to be there for empanelment, then if you're going to just dismiss the panel of sua sponte, that that shouldn't be allowed. Can I ask you a more sort of practical question about that? Let's just assume for purposes of the question that we agreed with you, wouldn't the remedy be to just pick a new jury and try this again? And if so, if there's no complaint about the fairness or makeup of the jury that originally tried the case, what does that get us? How does that, in other words, as a practical matter, what are we doing? Do you know what I mean? Well, yes, Your Honor, I understand. But I think, you know, the rules have to be enforced. And it's kind of not Mr. Downs problem. And I think the government sort of, you know, proceeded at their own risk by allowing this to happen that that the panel was struck. I mean, I think in order to enforce the rule, Downs has to be given a second try as to this. So I agree that it's important to make sure we enforce the rules. I'm just wondering, as a practical matter, right? If the problem is that he wasn't allowed to proceed with the first jury that was selected, we still can't have him proceed with the first jury was that was selected, our solution would be to have him pick a new jury that's fair, and retry the case. And that's exactly what happened. Well, Your Honor, another another, possibly not so practical, but possible option is he could be allowed to proceed with that original jury. You know, conceivably, they could, I mean, how's that going to happen? You know, wasn't this a few years ago? I mean, presumably people, some people may have moved. I just, you know, I think if we have, do you have any indication that those jurors are available? Or is this just completely speculation at this point? No, Your Honor, I don't have any knowledge of where those jurors are. But do you have any authority for the position that the solution here would be to somehow try to reassemble the jury that was originally impaneled, but not sworn? No, Your Honor, but I would just argue that that would be a remedy in this situation. You know, it would address the problem here, which is that the jury that Downs picked was not the jury that he was allowed to proceed with. On that point, Mr. McFarland, didn't Mr. Downs' lawyer basically agree with the procedure and tell the district court at one point that if only one juror said that he or she couldn't participate, then it would be okay to start anew? Yes, Your Honor, but that was not a problem for Mr. Downs here. No, Your Honor, I don't think that is a problem because that's, Mr. Downs wasn't there. You know, if Mr. Downs was there and had some input on this, that then this wouldn't be a problem. But because that was just the lawyer doing whatever the lawyer is doing, I don't think it has any bearing on this claim. So the last thing I'll say, and I know we've carried you well beyond your time, and maybe you just think about this for rebuttal if we revisit it, but, you know, Judge Rosenbaum has put this in sort of practical terms, but one way in which the practicalities sort of invade the law is you might want to think about whether there's a harmlessness problem, a harmless error problem. If you don't really have, you haven't made any complaints about fairness of the sort of the ensuing proceedings. And so I'm not asking for your response now, but you might want to think about for rebuttal whether or not there's a harmless error problem if there was an error under 43. Yes. Okay, Mr. McFarland, thank you very much. We've taken you over your time, but you've saved all of your time for rebuttal. Thank you. Okay, Ms. Acosta. Good morning. Winifred Acosta on behalf of the Appellee, the United States. May it please the court. I'll start with the interstate nexus issue, the first issue, sufficiency of the evidence. The government would rely on Maxwell. And secondly, the government would distinguish the decision in lively. In lively. Ms. Acosta, you're, it may not make a difference at the end of the day, but it's, it's an odd situation where a defendant is relying on an out of circuit case as his sole support. And the government doesn't even address the case in its answer brief. It's just very odd. I mean, you may think that the argument is meritless. You may think the case is distinguishable. You may think that the case is not persuasive, but it certainly wasn't helpful for me to see your brief devoid of any reference to lively. Yes, your honor, the sixth circuit in lively, if I may distinguish that case, your honor. Yes, that case did hold that the hard drive alone, the interstate nexus of the hard drive alone did not satisfy that element. However, in that case, there were two sets of images. So the first set of images was the memory card, the sand disk drive. And then the second set of images was the hard drive images. And what the circuit focused on was that there was no evidence that lively knew the co-defendant plan to produce the hard drive images. So there was a plan to have the co-defendant to take the pictures and say them on to the camera's memory card. However, the record lacked any evidence indicating that lively was aware of or had knowledge to participate in the co-defendant producing the hard drive images. As to the sand disk memory card images, the court found that there was sufficient evidence because the images were saved onto the memory card and the So can I, can I ask you a question though about that? I mean, with respect to lively, you know, it, I understand the factual distinction that you're making. And here, of course, we have the evidence where LH says that he admitted to her that he had downloaded it onto the computer. But even so, you know, it seems to me that the thought behind lively is that the language says that the visual depiction was produced using materials that have been mailed, blah, blah, blah, et cetera. And in other words, that it's actually created at the time that it's being made using materials that have traveled interstate, which would not then apply to the hard drive of a computer onto which it's copied, but then never later published or anything else. And so I wonder if you would just address that issue, please. Well, Your Honor, the transfer of the images from the cell phone to any device that had traveled in interstate commerce would be sufficient. In this case, the district court found that the hard drive disk, which held the images and the videos, had traveled in interstate commerce. And taken in light, most favorable to the government, there was sufficient evidence that Mr. Downs not only took some pictures- I'm sorry to interrupt, but I guess my question is making a different assumption. And it is going to the actual language, not to the evidence, except to the extent that when the videos were taken in the first instance, they were not taken using the computer on which they were found, right? And so the question is, why doesn't the language, the text, and the definition of produced, that's in the statute, require that when the actual production of the image in the first place occurs, that it be made using- and so I'm asking, why is it that when the image is taken, may be using equipment that has traveled in interstate or foreign commerce? Well, it's still our position, Your Honor, that the actual downloading, at the moment of the downloading, that's when the copies are produced. And so that would be sufficient to satisfy the interstate nexus. All right, so- And I guess I understand that's your position. I'm asking you, what in the language of the statute supports that? Does that make sense? Well, yes, Your Honor. So the elements, the defendant knowingly produced images of a minor, depicting a minor engaging in sexually explicit conduct using a facility of interstate commerce. We know that in this case, Mr. Downs indicated to the victim, L.H., that he was taking the pictures with the intent of also saving them, downloading them onto his home computers. But doesn't he say that- Which is what he did. Doesn't she say that she asked him later what he did with them? She did. That's correct. And he said, well, I downloaded them. So he wasn't- Yes, Your Honor. So we don't know that he was taking them with the intention of putting them on the computer. But even if we did know that, my question goes to, if this term is ambiguous as to whether the video images themselves at the time that they're made in the first instance must be taken using instruments that have traveled in interstate commerce, then we would have a rule of lenity issue. And so I'm asking you why the language is not ambiguous with respect to that issue. Do you know what I mean? Yes, Your Honor. The government doesn't believe it's ambiguous because, again, under the facts of this case, we can infer that that was Mr. Downs' intent to take the pictures, to later download them based on his statement to the victim LH. So- But he didn't make the statement until after he had already downloaded them. And even if he had, he's not using the computer to take the images in the first instance. That's correct. Right. So my question goes to what can we look to in the text of the statute itself or the definition of Purdue's that tells us that it doesn't matter whether the device that is used to make the initial image travels in interstate commerce, as long as the device on which it is used is available? Your Honor, I would have to, again, just rely on the evidence in this case, the record in this case, that what we have here is evidence that we can make a reasonable inference that at the moment that he took the pictures that he did, in fact, intend to download them onto his home computers. Isn't a possible response to Judge Rosenbaum's question that there are three ways of satisfying the interstate commerce nexus in the statute, and that only the first one has an intent requirement? Yes, Your Honor. I understand what I'm saying. And do you agree with it? I don't want you to guess. Your Honor, I don't. If you look at, if you look at subsection A of section 2251, after it goes through the production itself, the three jurisdictional hooks are one, and I'm putting the numbers on the statute doesn't have numbers, but one, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in and affecting foreign commerce. The second one has no intent requirement. It says, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce, or by any means, including by computer. I mean, I thought that would be the government's argument, as long as the jury was instructed on all three jurisdictional hooks, that the evidence here satisfied the second hook, which is that there was a transfer of the images onto a computer with a hard drive, with a drive that had been manufactured overseas. Yes, Your Honor. Or is the government's theory different? Yes, Your Honor, I would, the government would agree with that. Yes, Your Honor. Was the jury instructed on all three jurisdictional possibilities? I was looking for the jury instructions. Unfortunately, I don't have the jury instructions in front of me. What was the government's closing argument about? Was it that? The interstate commerce nexus was satisfied when Mr. Downs took the initial images? Or was the interstate nexus satisfied when he transferred the images from a camera to the computer? Your Honor, it's my understanding it was based on the transfer from the camera phone to the from the agent as to the interstate nexus of the hard drive disk, of both the red computer and the silver computer. All right, so can I, I just want to follow up a little bit here on the language of the statute. Number one, without divulging any client confidences, can you explain to me why under the second hook that Judge Jordan has described, you didn't just charge him with transmit? We're grinding here over the word produce and whether it necessarily means the initial creation or the transfer, as we said in Maxwell, why not just charge him with transmission? Well, Your Honor, I believe that the transmission or the transfer itself constitutes the production. So even though... I don't necessarily disagree with you about that, but Mr. McFarland's got an argument there. You've heard the three of us kind of, you know, weeping and gnashing our teeth about this. It just seems like transmission would have been easy peasy, lock, solid, cinch, done. Your Honor, I don't have an answer for that. Okay, that's fine. So on the language of the statute, it uses the word produce twice. And I'm going to use some ellipses here so we don't get sort of bogged down, but so any person who induces any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct should be punished if, and this is Judge Jordan's second hook, if that visual depiction was produced, so there's the second produced, or transmitted using materials that have been transported in interstate commerce, is that the government's contention that the word produce means different things in those two places, that the first time it's used, it means creation, such that the inducement, any person who induces any minor to engage in the act for the purpose of producing, that means creation. But then when it says the second time produce or transmit, that one can mean transfer, or is it the government's contention that produce throughout the statute can always mean transfer, and that in fact at the time of the inducement in this case, there was an intent later to transfer, produce as transfer? Your Honor, with all due respect, I don't think it really matters because the production occurred each time those images or those videos were copied and transmitted. That was a production. Yeah, I guess my question is, so I think then what you're answering my question, and this is a fair answer, you say, no, no, no, production can always include transfer, even in the first usage in the statute, it can always include transfer. And here, when the person was, our defendant induced any minor to engage in the conduct for the purpose of producing, he was inducing her, sorry, for the purpose of producing, he was inducing her to engage in the conduct so that he could later transfer the images. Yes, Your Honor. Okay, and I guess the evidentiary hope for that, back to Judge Rosenbaum's question, is that he later told LH that he had done it, and we can just sort of on the basis of that kind of rewind the tape and infer that he had the intent all along. Yes, Your Honor. Isn't there also, I don't want to be making the government's arguments for them, but I saw that of the evidentiary puzzle a little bit more simply because the images were found on his computer at home, right? Yes, Your Honor, two of his computers, yes. And there was testimony from others that they did not use that computer, right? That's correct, yes, Your Honor. So isn't there a fair inference that the jury could draw that the transfer from a camera that he used to take the pictures to a computer that he used was done by him? Yes, Your Honor, and not only that, but computers found at his residence. Right, so I don't understand why you're just relying on the victim's testimony about what Mr. Downs supposedly told her. It's not just the testimony, it's the testimony in conjunction with all of the other evidence. I think the testimony from the victim is just so explicit in representation of Mr. Downs' intent, his purpose. So that's why the government was highlighting that aspect of her testimony. All right, so can I ask you to shift gears briefly to Rule 43? Yes, Your Honor. I recognize, as Judge Rosenbaum has pointed out, that we may have remedy issues in this position that discharge of the jury is not a trial stage within the meaning of Rule 43. Well, Your Honor, the government looks at it as it's not, per se, jury impanelment. Rule 43 spells jury impanelment, right? Exactly, yes, correct. But the case management call was not, per se, jury impanelment. It was case management on the status of the case and to figure out where to go from there based on the extenuating weather conditions. Yeah, so I hear you, but it sounds then like this is a long-winded way of answering my question. Yes, the government's position is that discharge of the jury post-impanelment is not a trial stage within the meaning of Rule 43. Yes, Your Honor, that would be our position. Under any circumstances, jury discharge always? I mean, the reason I ask is that as I read 43, it seems to say, unless A, B, or C, and I'll just confess to you, I don't think any of the unless clauses apply here, that the defendant is entitled to be present, and then it says at the initial appearance, the arraignment, the plea, that sounds to me like pre-trial stuff, and then it says every trial stage, including jury impanelment, the verdict, the sentence, that sounds like trial stuff, and then it says sentencing, post-trial stuff. So I don't really understand how it is that discharge is necessarily decoupled from impanelment. Yes, Your Honor. But even if the court found that this case management call constituted a critical stage warranting Mr. Downs' presence, we still have the question of harmless error. And we would say that it was harmless error if there was any error based on the... Yeah, I get that. I'm really just asking about the error, frankly. Frankly, I expected when I read Rule 43, I expected that if I kept reading long enough, I would find some off-ramp clause that says, or in extenuating circumstances, if the district court finds that it is necessary, whatever. And I just never found it. It's a pretty wooden, rigid rule that says, unless A, B, or C, defendant has an entitlement to be present. I don't know if that makes Rule 43 a good rule or a bad rule, but it's the rule we've got. So I understand your harmlessness position. I was really just curious about the proper interpretation of the rule and the government's position with respect to proper interpretation. I mean, Mr. Costa, if at that case management conference, some issue had come up about the ability of one of the chosen jurors to sit, and the lawyers had engaged with discussions with the judge about whether that juror should be excused or not excused, your argument would be that Mr. Downs didn't have a right to be present, either in person or by phone? Well, Your Honor, we don't even know if it was feasible for Mr. Downs to be present. That's not the point. That's not the question, though. If at that case management conference, the issue was, oh, we've learned in the last couple of days this new information about one of the jurors who was chosen to sit. Now one side has objections about that juror. The other side wants to keep that juror. Yes, Your Honor. Would Mr. Downs have a right to be there under Rule 43? Under those circumstances, I would have to concede that yes. The answer has to be the same for this case, too, right? Well, Your Honor. The interpretation of Rule 43 can't depend on the outcome, in other words. Exactly. And we recognize that, Your Honor. But as I indicated before, even if there was error, it was harmless error. And then there's a question as to whether or not it was even feasible for Mr. Downs to be present, given the fact of the situation, the weather conditions at that time. We know that the case agent's car was underwater. The defense counsel was at the hotel. He had no power, no internet. And I believe he indicated that the night before he was on a video link, and the video link went out. So there are a lot of issues surrounding whether or not it was feasible for Mr. Downs to participate in that case management call. Okay, Ms. Acosta, thank you very much. Mr. McFarland, you've got your full five minutes for rebuttal. Your Honor, I'll be short here, but I think going back to Claim 1, that relying just on the testimony of the victim that Downs supposedly said that when asked later that he transferred the files, I don't think that in any way goes to his intent at the time of the production. And that, Your Honor, is our argument here, that at the time of the production, there's just the government put on absolutely no evidence that at that time there was an interstate nexus. And so I don't think he can, that the government rely on the victim's testimony to say that we can infer that at some later time, he was the one that created the interstate nexus. But intent can always be, well, I shouldn't say always, intent at a given point in time can be proved through events that happen after that point in time, right? Yes, Your Honor. Why is this case any different? Well, Your Honor, because the testimony of the victim doesn't really show anything about intent at the time. Just the fact that something happened later doesn't necessarily mean that at an earlier time that was planned to occur. I mean, if there was some testimony that that was his plan, then possibly that would defeat the insufficient evidence problem. But I don't think in this case that that's the case where he's saying that at some later time, he's saying that that's what he did with it. So, Your Honor, I just don't think that that's an answer in this case. I think if you get back to, the government can't point to a reading of the statute that doesn't necessarily tie the sexual exploitation to the production itself. But is that argument an intent argument or an argument that there was no jurisdictional nexus shown because the initial camera was not shown to be an item that traveled in or was created through some way in interstate commerce? Well, yes, Your Honor. I mean, I think the argument of the insufficiency is that there was insufficient evidence as to the interstate nexus. But I just think that this case is conviction because in that case, there was separately an interstate nexus that was proven at trial, whereas here there just wasn't. And so I don't think that the victim's testimony about what the defendant allegedly said he did later has anything to do with the intent that he had at the time. So, Your Honor, on that, Downs would ask that this court vacate his conviction on count one, and it should be barred by double jeopardy as to retrial on that count. As to the discharge of the jury, Your Honor, I don't offhand know of any case directly on point as to the harmless error nature of that Rule 43 violation. But, Your Honor, I don't think that that possibly can be a Rule 43, or it can be a harmless error situation because, as Judge Jordan was pointing out, that if you have a violation of Rule 43 in the impanelment, then necessarily taking apart the jury or dismissing the jury is also just a violation of Rule 43. And the fact that he was then later convicted by that jury, the new jury that wasn't the jury he picked, that that was not harmless error. You have to show plain error because there was no objection below to his absence? Yes. Yes, Your Honor, we would have to show plain error. You've got to show substantial prejudice, right, for plain error. How do you show that, given the practical issues that Judge Rosenbaum had asked you about? Yeah, I think it's evident just by the fact that he was convicted by the jury that wasn't the jury he picked. You know, in lots of situations where there's jury picking issues, the correct answer is reversal. We don't get into whether there was harmlessness as to that particular jury. Just the fact that there was a violation of the Rule, and as a result, he was convicted, I think that that merits reversal. Okay, Mr. McFarland, thank you. Mr. Costa, thank you both very much. Thank you, Your Honor.